Per Curiam.

Six assignments of error are presented by the appellant for the consideration of this court.
The appellant’s first and chief complaint involves the matter of accelerated tax depreciation. The company contends that for its future federal income tax liability it should be permitted to “normalize” these taxes for rate-making purposes. *474 This would involve having the commission allow for federal income tax expense not only the tax actually paid but an additional amount of $141,827, equal to the difference between the actual tax and the tax that would have been paid if the company had claimed no more than so-called straight-line depreciation as a deduction from income for federal tax purposes. In other words, the company is contending that the allowance for federal income tax expense should be computed as if straight-line depreciation rather than so-called declining balance depreciation were used.
To the contrary the appellee insists that this does not constitute a “tax deferral'” and that “normalization” is “in reality a word to describe the practice of calculating and paying income taxes on one basis while pretending for rate-making purposes that the liability for such taxes is greater than the amount which is paid or ever will be paid.”
In its decision on this question the commission reached the following conclusion with which this court agrees:
‘ ‘ The record in this proceeding makes it clear that this company will continue to make new additions. Further, it indicates that new additions will be made at a rate far in excess of that necessary to offset lesser amounts of depreciation deductions taken for older assets. Our experience indicates that this will be true in general of utilities in this state. In these circumstances and in view of the convincing testimony of Dr. Eisner, we must reject the theory that a deferral of tax liability arises from the use of accelerated depreciation, and consequently must reject normalization of taxes for rate-making purposes; no such deferral exists and no such liability will arise. We will allow only the expense incurred, that is, the federal income tax actually paid by the company. It is our opinion that this treatment will benefit both the ratepayers and the utility.
“In reaching this result, we join a number of important and distinguished jurisdictions * * *.
‘ ‘ The company contends that this commission should determine that the intent of Congress relative to Section 167 was to make interest-free capital available to taxpayers such as the company as distinguished from their consumers. The company argues that to fail to so do is to fail to follow the laws of Ohio *475 and of the United States, and the federal supremacy clause of Article VI of the Constitution of the United States.
“We have searched the Congressional Reports in an effort to determine the intent of Congress in enacting Section 167, and we cannot agree with the company’s contention. Rather we find ourselves in agreement with the statement of the Supreme Judicial Court of Maine:
‘ ‘ From our reading of Section 167 of the Code, supra, and the House and Senate Committee Reports thereon, to which the company has directed our attention, we are unable to find an intent on the part of Congress that the ratepayers of a regulated utility should provide an interest-free loan to the company through present payment of a deferred tax. We must not read more into the act than reasonably may there be found.’ ”
The appellant’s next complaint relates to the effect of the decision of this court in the case of Ohio Fuel Gas Co. v. Public Utilities Commission, 171 Ohio St., 10, the syllabus of which reads as follows:
“Under Ohio statutes, in determining the rate of return to he allowed a public utility on its statutory rate báse, consideration must be given to a corporation having a debt and an equity capital in a total amount substantially equal to the statutory rate base, and what is to he allowed for interest on the amount of such debt is what would be reasonably necessary to pay interest on that amount of debt even though what is so allowed for interest may be more or less than what is actually paid by such public utility on its existing indebtedness.”
Concerning this the commission made the following comment:
‘ ‘ The commission, in the light of these pronouncements, has re-examined its finding of 5.5% as the fair rate of return to the applicant utility. Applicant’s exhibit 37 shows the capital structure as of the date certain to be 50.6% debt, 10.7% preferred stock and 38.7% common equity. Applicant’s exhibits 35 and 36 indicate that the composite costs of preferred and debt capital are 4.148% and 3.417% respectively. The rate on common equity proposed by applicant’s rate of return witness was 8.5%. * * *
“In view of this, and taking into consideration the pro *476 nouncements of the court in the Findlay case, the adoption of the policy of allowing tax savings resulting from the use of accelerated depreciation to flow through to the consumer, and all of the evidence of record in this proceeding, the commission is of the opinion that a 5.6% rate of return to a utility ‘having a debt and an equity capital in a total amount substantially equal to the statutory rate base’ is just and reasonable.”
Similarly, the further complaints of the appellant are without merit. The commission’s orders are not unreasonable or unlawful and must be affirmed. A study of the hundreds of pages in the extended record and briefs discloses that on each issue the commission’s findings and orders are supported by the evidence and are in accord with constitutional and statutory requirements.

Orders affirmed.

Weygandt, C. J., Zimmerman, Taet, Matthias and Bell, JJ., concur.
O’Neill, J., dissents.
Herbert, J., not participating.